Filed
RECEIVED

OCT 30 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

P #1
keepe
NP

Cornelius Lopes
6251 Quartz Place
Newark, CA. 945460
corneliuslopes@gmail.com

C 20 07758

Cornelius Lopes, Michelle Bachelet, Office of the United Nations High
Commissioner for Human Rights (OHCHR)

v.

Kevin DeLeon, Nancy Pelosi, Gavin Newsom, Maria Elena Durazo, Eloise Gomez
Reyes, Joaquin Castro, Janet Napolitano, Toni Atkins, Eleni Kounalakis, Robert
Hertzberg, Shannon Grove, William Scott, Connie Leyva, Mike McGuire, Jim
Nielsen Erika Contreras, Katrina Rodriquez, Xavier Becerra, Alex Padilla and Bod
Archuleta, Lori Cox, Anissa Basoco-Villarreal, Carl Guardino, Brian Brennan, Patrick
Yoes- Fraternal Order of Police, Patrick Lynch- Police Benevolent Association of the
City of New York

Every true man has pride of race, and under appropriate circumstances when the
rights of others, his equal before the laws, are not affected, it is a privilege to
express such pride and take such actions based upon it as to the plaintiff seems
proper; these complaints address those appropriate circumstances. The California
legislative body, the Governor the Lieutenant Governor and head of the U.S.
Department of Homeland Security denies the plaintiff and the Negro race such
privileges, by memorandums, employee guidance's and legislative laws as to
exclude the plaintiff and the Negro citizens from their own tax dollars benefits
and they segregate these service by race.  For the very services, the defendants
continue to give unconstitutionally benefits to illegal immigrants from Mexico and
Central American they deny the American taxpayer the same benefits. The
defendants segregate by prescribed rules with origins and purposes for one
pathway to citizenship and for illegal immigrants and a separate pathway to
minimizing and taking away rights of the plaintiff and Negro Americans. These
complaints are about a legislative body from the State of California and the
Department of Homeland Security who uses its judicial tribunal, which is the state

and federal police to accomplish and accommodate separate but equal paths for the American Negros and illegal immigrants from Mexico and Central America. The Constitution's Framers believed that a bill, the Bill of Rights was appropriate for an unlimited government and the Tenth Amendment is truism today. The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, but are reserved to the States respectively, or to the people within those states. The question to the Court is, by the Tenth Amendment can a federal power be claimed by the defendants, through the Constitution? To formulate an answer, the Court needs to look at the enumerated powers, not the Tenth Amendment. In Garcia v. San Antonio Metropolitan Transit Authority, a narrow majority of the Supreme Court held, that a city was required to comply with federal labor laws, and that state sovereignty interests can be protected by the states participation of the political process. As my claims will show, the defendants' legislative laws AB1576, AB2779, SB1236, AB130, AB131, AB4, Post-Secondary non-resident scholarship, ABX1SBX1, AB236, AB1593, AB1024, SB54, SB1310, SB477, SB141, SB1159 and AB2792 are all unconstitutional. They deal with commerce; the Commerce Clause is the only authority to these draconian laws. These state legislations are unconstitutional; therefore invalid. Moreover, the legislations violate the plaintiff and Negro races, Fourteenth Amendment, Fifth Amendments, Fourth Amendments and First Amendments.

California Legislations known as SB54 the California Values Act, AB130 and AB131, DAPA are all unconstitutional the defendants accommodate separate but equal paths for the plaintiff an American Negro and undocumented immigrants youth who came to this country as children (DACA), the defendants accommodate separate but equal paths for the plaintiff an American Negro and undocumented parents of U.S. citizens (DAPA), the defendants accommodate separate but equal paths for the plaintiff an American Negro and The One California program (free education for immigrants), the defendants accommodate separate but equal paths for the plaintiff an American Negro and undocumented immigrants in AB1576 which is state funded food benefits.  It is said, the origins and its purposes are not much to exclude the American Negro's from their rightful states services but to accommodate illegal immigrants who are in the deportation statuses. The defendants are using local schools and revenues tax dollars from all 121 cities in California to fund the defendants segregated services for illegal immigrants. In Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U.S. 612, federal power has relation to the maintenance of adequate instrumentalities of interstate commerce. But the agency is not superior to the commerce which uses

it. The protective power extends to the former because it exists as to the later. The Court must agree that the due process clause of the Fourteenth Amendment may make it unlawful for a state to abridge by is statutes on the freedom of speech of the plaintiff and the Negro race which the First Amendment safeguards against encroachment by the federal government or the right to peaceful assembly; as well as the right to vote against any provisional ballet initiative that's been denied the plaintiff right to vote on.

These complaints are alleging that the defendants "political" Acts of memorandums and employee guidance's as well as Nancy's rebel yell, "there are no jobs in America, American cannot do" prevents the plaintiff and the Negro race in California from effectively exercising their rights of free speech, his Fourteenth Amendment Rights; his due process rights afforded to them by the Constitution of the United States. The defendants most members of California legislature are also accused of providing benefits to illegal immigrants from Mexico and Central America. Also, the defendants are providing immunities as protections from state's and federal laws as the defendants accept government funds for to hire police and grants to pay then and build prisons from grants offered to the cities. Moreover, the defendants have a business interests to protect the covenants they have entered into with a foreign nation of peoples from Mexico and Central America. The defendants accept grants offered within various crime bills, to hire police and create crime model grants. The local police in cities who apply for those grants are able to create any crime initiative from those grants and administer it usually to the Negro communities, the drug courts in each district has their separate rules and gang task force are created for the Negro American because the illegal immigrant has immunities from crimes and the defendants use these grants on the plaintiff and the Negro communities, who are not offered immunities by the defendants, these grants also pay the salaries of the very police who only arrest Negro's the plaintiff race and offer illegal immigrants from Mexico and Central America, immunity. The Court does realize, a city employee's (police) are offing sovereign immunity to a foreign national for past crimes, future crimes and current crimes, these action by a city employee is a crime and California Legislation SB54 is not a valid law and unconstitutional. For example, California's SB54 which gives immunity to illegal immigrants was approved by the Governor on October 5, 2017 a day earlier Congress introduced the Sentencing Reform and Corrections Act on October 4, 2017. The defendants knowing

Congress was going to pass a bill which had mandatory minimum sentences for crimes; they specifically created a California law so the plaintiff an American Negro and the Negro race would be the default criminal for all crimes. Then the defendants offer immunity to a foreign national who's in immigrant deportation status, the defendants are guilty of 18 U.S. Code § 1581 peonage; Legislation SB54 is obstructing enforcement state and federal laws so that the illegal immigrant from Mexico and Central American are not charged with crimes; and unconstitutionally giving them sovereign immunity. Within the defendant's covenants there is a mythical label to the illegal immigrant as an essential worker which is the defendants authority for employers in state and private sector jobs to hire, educate, provide free monthly income, and provide health care to the illegal immigrant. The defendants provide no protections from state and city employees who are able to murder Negro's indiscriminately, there's no immunity to stop killing the plaintiff's Negro race. The defendants are guilty of (a) whoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both. (b) whoever obstructs, or attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be liable to the penalties prescribed in subsection (a). This is unconstitutional, just like slavery had to be outlawed, here we go again dealing with laws of peonage in the state of California. The defendants created two paths of citizenship based on their legislative laws, one leading towards citizenship for the illegal immigrants and the other is mandatory death for the Negro race, which is done under the color of the law.  Another example, SB1310 written by the defendants in 2014 it changes a misdemeanor sentence from 365 days which is a year to 364 days. A year later, Congress passed HR 3713 it is the Sentencing Reform Act of 2015 and defines a felony that if anyone is sentence to 12 months it is an automatic felony and if two or more convictions a person can get life in prison.

The defendant's actions constituted legislative activity for which created a liability, Pfister v Arceneaux (1966), CA5 La 376 F2d 821, 10 FR Serv 2d 124. In Pfister, this issue there was Pfister's "Opposition" to an affidavit introduced by the plaintiff, James A. Dombrowski. In it Dombrowski declared upon oath that on the day of the raid Pfister made a statement to the press in which he described the purpose and method of carrying out the investigation and said, "All of the

members of the committee have unanimously concurred in the operation which took place today." In the case at bar a similar action and statement by the defendants, assembly member Gonzales stated, "The Latino Caucus has worked hard to make sure this community is prioritized in this year's budget, and I'm proud of that work reflected in the joint agreement announced today between the Assembly and Senate, KQED News. The Court's Pfister holding continues, whether Pfister made such a statement and whether it was accurate has a serious bearing on the question whether Pfister and the other members of the committee were "acting in the sphere of *legitimate* legislative activity, which would entitle them to immunity. Tenney v. Brandhove, 1951, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1927. Unlike the Tenney decision, the Court must hold, the plaintiff has meet the burden of positively and clearly demonstrating that there is a genuine issue of fact and no doubt as to the existence of such an issue is resolved against him." National Screen Serv. Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647, 651; accord, Poller v. Columbia Broadcasting System, Inc., 1962, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed. 2d 458.

The defendant's in their committees and positions used their legislative positions in making "political" statements undermining the plaintiff's constitutional rights. Legislative immunity will not protect from the disclosure by a state senator documents showing all allocations of money paid or made to illegal immigrants under administrative actions be it by voting in legislative hearings or in the budget process and an legislative action. Manzi v. DiCarlo, 982 F. Supp. 125 (E.D.N.Y. 1997). On its face SB1310 and SB54 are discriminatory against the Negro in the ability to procreate; sterilization laws are a violation of due process of laws and of the constitutional guarantee of equal laws. The Court must apply strict scrutiny here.

The Court then comes to the question whether from the complaints if the defendants were acting in the sphere of legitimate legislative activity? Legislatures may not of course acquire power by an unwarranted extension of privilege. The House of Commons' stated claim of power to establish the limits of its privilege has been little more than a pretense since Ashby v. White, 2 Ld. Raym, 938, 3 Id. 320. This Court has not hesitated in past holdings to sustain the rights of private individuals when it found Congress was acting outside its legislative role, here the defendants are from Homeland Security, Senators, a Governor and the Californian Chicano (Latino) Caucus. In Kilbourn v.

Thompson, 103 U.S. 168, 26 L.Ed. 377; Marshall v. Gordon, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881; compare McGrain v. Daugherty, 273 U.S. 135, 176, 47 S.Ct. 319, 329, 71 L.Ed. 580 are stop gaps for the unconstitutional memo's, directives and polices which have no legal standing. The history of this Court is familiar with prior questions regarding if defendants state and federal actions were the questions arose to the sphere of legitimate legislative activity. In Eastland v. United States Servicemen's Fund (1975), the Court issued a subpoena duces tecum to the bank where the organization had an account, ordering the bank to produce all records involving the account. In Doe v. McMillan(1973), the action seeking damages and declaratory and injunctive relief for invasion of privacy that they claimed resulted from the dissemination of a congressional report on the D.C. school system that included identification of students in derogatory contexts. The named defendants included members of a House committee, Committee employees, a Committee investigator, and a consultant; the Public Printer and the Superintendent of Documents; and officials and employees connected with the school system. The Court of Appeals affirmed the District Court's dismissal of the complaint on the grounds that the first two categories of defendants were immune by reason of the Speech or Debate Clause, and that the D.C. officials and the legislative employees were protected by the official immunity doctrine recognized in Barr v. Matteo, 360 U.S. 564 . held, the congressional committee members, members of their staff, the consultant, and the investigator are absolutely immune under the Speech or Debate Clause insofar as they engaged in the legislative acts of compiling the report, referring it to the House, or voting for its publication. The Clause does not afford absolute immunity from private suit to persons who, with authorization from Congress, perform the function, which is not part of the legislative process, of publicly distributing materials that allegedly infringe upon the rights of individuals. The Court of Appeals, therefore, erred in holding that respondents who (except for the Committee members and personnel) were charged with such public distribution were protected by the Clause. The Public Printer and the Superintendent of Documents are protected by the doctrine of official immunity enunciated in Barr v. Matteo, supra, for publishing and distributing the report only to the extent that they served legitimate legislative functions in doing so, and the Court of Appeals erred in holding that their immunity extended beyond that limit. Pp. 318-324. 412 U.S. 306, 307 148 U.S. App. D.C. 280, 459 F.2d 1304, reversed in part, affirmed in part,

and remanded. In Richard Schuh and Gregory Scott, Plaintiffs, v. Denis G. Kelly and Leonard Remo 2007, the Court held that legislative immunity covers all aspects of the legislative process, it would not protect the Council members from a charge, if asserted here, that they administratively fired, or conspired to administratively fire, any Plaintiff prior to the date on which his or her position was effectively abolished pursuant to the legislative resolutions. They remand the case for the District Court to determine, based on the operative complaint or upon further amendment, whether any of the Plaintiffs have alleged or could allege such a claim. Here in SB54 and SB1310 had prior knowledge laws were going into effect that were going to alter a race heritage in the United States, which allowed for the illegal immigrant race to be "administratively" be immune from legislative criminal process. See Hill v. City of New York, 45 F.3d 653, 657 (2d Cir.1995).   According to the amended complaint, Plaintiffs were all longtime employees for the City until they were terminated in 2004. Here in the case before the Court, the defendants had committed monies in the stat budget and was advocating for them in the hall of Congress prior to SB54, SB1310 went into law. The plaintiff asks the Court when the time comes to consider a motion to dismiss 28 U.S.C. subsection 1291. The Court consider under the collateral doctrine, an order denying a motion to dismiss a complaint against these defendants  is immediately reviewable to the extent that the denial has turned into an issue of law, Locurto v. Safir, 264 F.3d 154, 164 (2d Cir.2001). In Baker v. Carr (1962), a suit in a Federal District Court in Tennessee under 42 U.S.C. 1983, on behalf of themselves and others similarly situated, to redress the alleged deprivation of their federal constitutional rights by legislation classifying voters with respect to representation in the General Assembly. The Court held, (1.) The District Court had jurisdiction of the subject matter of the federal constitutional claim asserted in the complaints. (2.) Appellants had standing to maintain this suit. (3.) The complaint's allegations of a denial of equal protection presented a justiciable constitutional cause of action upon which appellants are entitled to a trial and a decision. The Court also held "Jurisdiction 369 U.S. 186, 199 of the Subject Matter", the only matter set fourth in the complaint does arise under the Constitution and is within 28 U.S.C 1343. In United States v. Alvarez RGK, (2010). The issue in this case was Defendant-Appellant Xavier Alvarez conditionally pleaded guilty to one count of falsely verbally claiming to have received the Congressional Medal of Honor, in violation of the Stolen Valor Act (the Act), 18

U.S.C. § 704(b), (c), reserving his right to appeal the Act's constitutionality. The Act therefore concerns the Court because of its potential for setting a precedent whereby the government may proscribe speech solely because it is a lie. Like the case at Barr, SB54 section 3. 7284.2 (a) Immigrants are valuable and essential ... here the plaintiff cannot nor should the Court adapt to law as broad ad the defendants and advocate for a foreign national based on race without trampling on the fundamental rights of all California American citizens right of freedom of speech. The defendants are of illegal immigrant heritage and created  laws for the acceptance of a foreign national dominance in the workplace, enjoyment of life free from segregation because the defendants law prohibit all deception in all circumstances that the illegal immigrant has notably superior rights than American citizens and to the rights of personal and political self-rule. The Court must hold, that regulations  in SB54 are of false factual speech must, like other content-based speech restrictions, be subjected to strict scrutiny unless the statute is narrowly crafted to target the type of false factual speech previously held prescriptible because it is not protected by the First Amendment.

The Court must look broadly at the plaintiff's arguments which are written to address the defendants legislative political memorandums, employee guidance and legislative Acts which are derived to re-institute segregation in California and consider the scope of the privileges as applied to the facts of the present cases mentioned in these complaints. The holding from Justice Miller stated in a similar case before the Court In Kilbourn case,  It is not necessary to decide here that there may not be things done, in the one House or the other, of an extraordinary character, for which the members who take part in the act may be held legally responsible.  After reading these complaints the Court must conclude only that in these complaints the individual defendants and the legislative committee were not acting in a field where legislators traditionally have power to act. Plaintiff recognizes when the legislature itself seeks to act as executor of its own laws, it is no longer legislating and is no more immune from process than administrative officials it supersedes; legislative committee members have no immunity against proceeding to enjoin its interference with local school board's federal court ordered desegregation efforts. Bush v Orleans Parish School Bd. (1960, ED La) 188 F Supp 916, affd (1961) 365 US 569, 5 L Ed 2d 806, 81 S Ct 754.

There are some laws that still need Congresses attention, unfortunately the U.S. Constitution does not specifically guarantee equal rights for women.  If the Court

looks closely at the words of the original Constitution, the term "man" or "men" is not used; rather, "person," "persons" and "people" are the words of choice. That would seem to imply that the founding Fathers intended to include women in the scope of their document. A famous exchange between Abigail and John Adams in 1776 advised John, then serving in the Continental Congress in Philadelphia, that in the "new Code of Laws" that would have to be adopted he and his fellow legislators should "Remember the Ladies," for "all men would be tyrants if they could.  Letter from Abigail Adams to John Adams (Mar. 31, 1776), reprinted in The Book of Abigail and John 120-21 (Lyman Butterfield, Marc Friedlaender & Mary-Jo Kline ed. 1975).

In 2016 the 22 members of the California Latino Legislative Caucus circulated a petition or networked the legislature floor to create a series of Latino legislation using the California general fund for illegal immigrants.  Plaintiff is alleging separate accommodations for two races authorized by the California legislative body whose race or heritage is similar to the people the legislation it is supporting.  DACA, SB54, One California and DAPA are laws permitting and even requiring, their separation in place of public accommodation. The laws inly inferiority of either race or pure contempt of the Negro race by express use of the states police powers. Therefore, these complaints object to the California statues that interferes with the plaintiff person and continual freedoms as a citizen. Congress has provided laws for some welfare benefits for citizens does not require it to provide like benefits for all aliens, nor does Congress treat aliens differently from American citizens and itself does not imply different or separate treatment. In Mathhers v. Diaz, 426 U.S. 67, 96 S.Ct (1976), lawful alien admitted to the U.S. lawfully and refused Medicare Part B, and the Court reversed  a lower court's order the found unconstitutional for aliens to receive benefits. Here, in these complaints, the defendants "political" Act amount to slavery of the Negro race, treason against the U.S., tax fraud, violations of state workplace laws and individual constitutional rights violations. The Fifth Amendment, as well as the Fourteenth Amendment protects even those presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection. Wong Yang Sung, supra; Wong Wing, Supra. Graham v. Richardson, 403 U.S. 365, This case holds the strongest support if welfare benefits for immigrants or an immigrant not meeting a residence within the U.S., violates the Equal Protection Clause. In short, citizens and those who are most like citizens qualify. Those who are less like citizens do not.

The defendants Kevin DeLeon, Nancy Pelosi, Gavin Newsom, Maria Elena Durazo, Eloise Gomez Reyes, Joaquin Castro, Janet Napolitano, Toni Atkins, Eleni Kounalakis, Robert Hertzberg, Shannon Grove, William Scott, Connie Leyva, Mike McGuire, Jim Nielsen Erika Contreras, Katrina Rodriquez, Xavier Becerra, Alex Padilla and Bod Archuleta, Lori Cox, Anissa Basoco-Villarreal, Carl Guardino, Brian Brennan are all treasonous rats who are Benedick Arnold's within the California State Governments.  The defendants created a tax and racially segregated scheme that are codified as California Constitutions of laws and amendments to accomplish the states unconstitutional immigration plans. In 2019 - '20 the California budget had a budget line specifically for illegal immigrant it was $75 million dollars has been allocated for the immigrant community. The state is a sanctuary state and pays $834.48 every month for the FY2018-19 so they can import constituents into their districts in an attempt to gain future and current votes of those living in that district. The chart below are the cash payments made to all the illegal immigrant in California, all 1.4 million of them. They are paid by the revenue, tax dollars from the plaintiff and the citizens of California. The defendants take money from the state budget to supplement the lives of non-American people who do not under the constitution deserve federal or state assistance. The defendants use the California budget, unconstitutionally to appropriate to a race of people from a foreign land money each month since 1995. The defendants cash Assistance Program for immigrants violates federal and state law; as well as, the Commerce Clause.  Regents of the University of California v. Bakke, there were two major decisions from the case that still stand today. Firstly, the quota system that was once used by the University of California, Davis' admission process for minority students was ruled unlawful. Secondly, higher-level academic institutions were now prohibited from considering race in the admissions process. The pattern of the defendants "political" Act, they all use a quota system to accomplish segregation in California. These legislative acts violate the plaintiff and the Negro race's First Amendment rights that the state justification can keep the plaintiff and the Negro race off a list that illegal immigrants from Mexico are on.

# Cash Assistance Program for Immigrants (CAPI)`

## KEY DATA/ASSUMPTIONS (CONTINUED):

Base CAPI
- The average monthly caseload is 1,046 for FY 2018-19 and 1,036 for FY 2019-20.
- The average monthly grant amount excluding CAPI Parity is $799.11 for FY 2018-19 and $813.00 for FY 2019-20.

Extended CAPI
- The average monthly caseload is 13,839 for FY 2018-19 and 14,158 for FY 2019-20.
- The average monthly grant amount excluding CAPI Parity is $820.60 for FY 2018-19 and $834.48 for FY 2019-20.

CAPI Parity
- The SSI Cash-Out Reversal CAPI Parity increases benefits by $10.00 per individual and $20.00 per couple starting June 1, 2019.

The illegal immigrants are paid on average $834.48 to $1400 a month out of the general fund of the State of California. The defendants are California's Democratic leaders also known as the DNC are including cash payments to undocumented people; as well as paid health coverage for immigrants' children and adults and senior illegal immigrants; they have been since 1995.

The tax incentives bill, AB 1593 sponsored by CA Assembly member Eloise Reyes, allows for illegal immigrants to apply for and receive federal and state tax refunds. Moreover, the California legislation allows the illegal immigrants from Mexico and Central America to go as far back as 1995 for tax refund purposes. The defendants achieved this tax scheme by amending California tax code so illegal immigrants can use (EITC) Earned Income tax Credit to include undocumented tax filers for the purposes of getting a federal and state tax refund. Therefore, increasing the wealth of a race of people for work not done; this is tax fraud.  To be clear, the defendants give money each month to illegal immigrants from California's general fund. Then can use that income not earned, to get a federal and state tax refund. This is tax fraud. The 2017 - '18 California budget increases the illegal immigrant program baseline funding and expands the state funded services to include removal defense services, to broaden affirmative relief, and to expands legal training and technical assistance. The program will have a yearly $45 million investment through the 2019-2020 fiscal year to support

the following funded services and representation. For example, AB1593 although it is not getting the budget from CalFire the defendant's scheme, their action and motivations are similar. AB1593 amends the state income tax law, for tax purposes an individual of citizenship of immigration status. Be eligible for earned income tax credits subject for the individual taxpayer. SB1593 then imposes a mandate that requires the state to reimburse local agencies and school districts for certain costs mandated by the state . . . impose a state-mandates local program. . . establishes the continuously appropriated Tax Relief and Refund Account and provides that payments required to be made to taxpayers or other persons from the Personal Income Tax Fund are to be paid from that account, including any amount to be paid as an earned income tax credit in excess of any tax liabilities. The defendants like CalFire amendments to the state constitution are having the taxpayer pay to allow illegal immigrants to receive, cash, medical benefits, FREE college, tax refunds on income not earned. The defendant's actions violate the commerce clause, tax lax, embezzlement of federal funds, misappropriation of state funds, theft, and treason.

In 2014 One California was created for immigrant service funding, 2015-16 State budget for immigrant services $15 million, 2016-'17 the state budget allocated $30 million for immigrant service funding, 2017-'18 state budget allocated $45 million and also in 2017 Governor Brown infused $20 million to support legal assistance for California DACA people. The California Legislative Caucus has created the Cash Assistance Program for immigrants (CAPI) in fiscal year 2018-19 monthly grants (state welfare) on average gave the immigrant cash of $813.00 for every illegal immigrant in California. On average in the fiscal year 2019-20 the illegal immigrant received $834.48; the plaintiff and the Negro race did not get cash from the state. There is a federal and state mandate to get health coverage and if a person does not have it, they are penalized. The defendants are working on several state mandates for health care but currently Covered California is the mandated by the defendants for the plaintiff and the Negro race. Having health coverage is the law. If you do not have it, you may have to pay a penalty to the California Franchise Tax Board. The penalty for not having coverage the entire year will be at least $750 per adult and $375 per dependent child under 18 in the household when you file your 2020 state income tax return in 2021. A family of four that goes uninsured for the whole year would face a penalty of at least $2,250. The penalty will be applied by the California Franchise Tax Board. Again,

as the facts show the defendants have separate laws for two different races of people and one race happens to be American. Question to the Court, currently under California law, the California Franchise tax Board can penalize a Californian citizen for not having health coverage by issuing a penalty. Are the defendants in violation of a mandate that cannot be upheld by the Commerce Clause? Under the defendant's mandate, a typical family of four that goes uninsured for the whole year would face a penalty of at least $2,250. And, under California law ABX1 and SBX1 expanded Medi-Cal to immigrants' who are adults, children in California. All 1.4 million illegal immigrants get FREEE health care. Second question, is the penalty the defendants impose on American citizens in violation of the holding in NFIB v. Sebelius? The Court stated an individual mandate cannot be upheld as an exercise of Congress' power under the Commerce Clause. There the Court held,  individual mandate that's requiring the purchase of health insurance under the AFA was not the regulation of commercial activity so much as *inactivity* and was, accordingly, impermissible under the Commerce Clause. The question again is, under the Commerce Clause does penalty from the defendants which only is imposed on American citizens in violation of the holding in NFIB v. Sebelius, since immigrants are mandated to get free healthcare?

The mandate is also in violation of affirmative action which allows under Title VII of the Civil Rights Act, you cannot base a hiring decision, in whole or in part, on a person's race or gender. In addition, One California is in violation under Executive Order 11246, a college or university must take affirmative steps to ensure its hiring practices are fair, equitable, and free from discrimination.

To address the federal tax deductible immigrants are allowed to get. The United States IRS states on its website, to qualify for the BENEFIT for working people you must meet certain criteria to receive the Earned Income Tax Credit. File a tax return, you must have earned income from working for someone. It is well known that California has a boom-and-bust economy. Much of it has to do with the state's unusual tax structure which relies upon personal income tax receipts for two-thirds of the state budget. Immigrants from Mexico and Central America are not allowed to receive any federal or state benefits the plaintiff and his Negro race similar do not have. These are the plaintiff and the Negro race's tax dollar service not for illegal immigrants from Mexico and Central America.

 The Chicano caucus has created AB 1593 a tax scheme in which the state pays the illegal immigrant for not working then the immigrant gets a tax break.  Similarly, when the Covid19 Epidemic started in March 70,000 laptops were donated to California Schools and all were shipped into Los Angeles, Fontana, Rialto, Colton, Grand Terrace, San Bernardino this is District 47 Assembly member Eloise Gómez Reyes represents. Chicano caucus segregates states funding and creates cash cows, grants and give free medical care to immigrants under the state budget. While California Negro's must abide by federal law for health care. Tony Thurmond, State Board of Education President Linda Darling-Hammond and other officials reached out to the private sector for help. Apple, Sprint, T-Mobile, Amazon, Hewlett-Packard, Verizon and others have stepped up, Siebel Newsom said. This has enabled the state to distribute hotspot devices, Chromebooks, and other tools to students in need. In addition to companies that have donated devices, philanthropists have given at least $3 million to support children's education in California. To supplement contribution from the private sector, the California Public Utilities Commission will set aside $25 million to provide hotspots and Wi-Fi, as well as $5 million to procure additional Chromebooks and iPads for students.

In the 2020-21 state budget the defendants have introduced AB 194, FREE CHILDCARE FOR THE IMMIGRANTS.  which includes both the tax incentives for undocumented immigrants, as well as health insurance for all seniors over age 65 regardless of immigration status. Since the pandemic depleted California's economy, Newsom revised his budget plan in May. It initially appeared without the expansion to California's medical insurance assistance program (Medi Cal) that now included undocumented immigrants. The Fourteen Amendment is concerned here as these complaints reduce themselves to the question whether SB54, Dreamers, sanctuary City ordinances, AB 1596, AB194, DACA or DAPA of California are reasonable and with respect to this there must necessarily be a large discretion on the part of the legislature. For the Court to determine the reasonableness of the defendant's legislation. The question of reasonableness, it is liberty to act with reference to the established usages, customs and traditions of the American people, and with a view to the promotion of their comfort, the preservation of the public peace and good order. These illegal immigrant legislations were written by American's within the California Latino Caucus; therefore, the Court cannot say that these immigrant legislations which authorizes and even requires the separation of the two races in public conveyances is reasonable.

The plaintiff asks the Court to determine the questions of reasonableness in AB194, AB54 and AB1593, are memorandum requiring the separation of the two races by public employees is obnoxious to the Fourteenth Amendment. SB54, Dreamers, sanctuary city, DACA and DAPA, SB194, SB1593, are illegal Mexican and Central American immigrant services. The defendants have offered into California laws through legislation known as SB54, SB1310, AB1593, DACA, DAPA, AB130, AB131 and AB1593.  Constituently of which the legislative "political" acts have not seen to have been questioned to the constituently valid, or their corresponding acts of the legislatures. It appears to the plaintiff; the total of $3.8 billion dollars is spent on illegal Mexican and Central American immigrant services including educational opportunities the plaintiff and the Negro race has no line item on the state budget listing our race.

The Negro race was born in America and have been asking for the very same Negro DREAMs that the defendants have contracted and offered to illegal Mexican immigrant Dreamers status. Negro's and the plaintiff pay taxes and do not get a check, healthcare, free college education which the defendants have given for 25 years to a different race of a people from a foreign land. The rooster has come home to nest; therefore, the plaintiff's argument here assumes that the social prejudices of the defendants may be overcome by legislation. The plaintiff and the Negro race's equal rights cannot be secured except by enforcement of this Courts holding and find the defendants guilty of treason. The defendant's powers are to eradicate the plaintiff's Negro race through memorandums and policy guidance's to the defendant's employees about racial physical differences of the two races. The attempts are result in accentuating the differences of choices for the two races are given any situation if encountered by the defendants, employees the police. The defendants "political" Act are genocide upon the plaintiff and the Negro race.

The Court must hold, In part, the resolution directs the Committee 'to ascertain * * * all facts relating to the activities of persons and groups known or suspected to be dominated or controlled by a foreign power, and who owe allegiance thereto because of religious, racial, political, ideological, philosophical, or other ties, including but not limited to the influence upon all such persons and groups of education, economic circumstances, social positions, fraternal and casual associations, living standards, race, religion, politics, ancestry and the activities of paid provocation * * *.' Cal. Senate Resolution 75, June 20, 1947.

California Constitution, bill, AB 1593 sponsored by CA Assembly member Eloise Reyes by expanding EITC to include undocumented tax filers, who are illegal immigrants violates U.S. Tax Law. Assembly bill introduced by Reyes, Section 1    , (e) A working parent with two children can receive a CalEITC of up to $2,467. Section 2, continues the tax scheme by duplicating how they created the budget for the Cash Assistance Program within the State Budget under Emergency service, CalFire. The illegal immigrants are allowed to go went back to 2015 so the illegal immigrant can receive CalEITC of up to $2467. The Court is aware, to qualify for the Earned Income Tax Credit one of many qualifiers is that unemployment  is ineligible to receive money from the government if (1) not an American (2) state welfare/payment to not work does not count.

 The amended Bill reads in Section 2 (a)(1) for each year beginning on or after January 1, 2015, there shall be allowed against the "net tax". Immigrant Service Funding and Cash Assistance Funding also stated in 2015. The "One California" Immigration Services Funding program was established in 2015-16 budget and is administered by the California Department of Social Services. Starting in 2016, the program has funded cash for free immigration services, through qualified nonprofits; some affirmative immigration remedies including the DACA program. For example, in the 2019-'20 Governor's Budget Proposal Higher Education Highlights, California State University proposal.  Governor Newsom's first budget proposal calls for the CSU to receive a total increase of $562 million over this current year. This includes a base (ongoing) increase of $300 million as well as $247 million in one-time money. The segregation in California University is ongoing, because segregation is funded by the state of California. This is an unprecedented 8% increase to the state general fund allocation to the CSU. This brings the total CSU budget to more than $7.8 billion for immigrant services only. Newson and Pelosi are assholes!  In contrast, Governor Moombeam in his January 2018 budget proposal for 2019-20 called for $92.1 million in new ongoing money for the CSU, a 3% increase to the state general fund allocation.  The budget proposal also includes $7 million for legal services for undocumented students, faculty, and staff through the Health and Human Services budget.  The January budget proposes $10 million of the ongoing money to convert funding for enrollment allocated for immigrant services in the 2018-19 budget as one-time money into ongoing funding. The budget proposal also includes $5.3 million ongoing for improved immigrant Mental Health services and improving Counselor-to-Student ratios. On the ballet California in 2020 is a repeal to affirmative action, which confidently applies only to UC hiring and students in the

UC system. The proposed repeal affirmative action is to hire Spanish speaking counselors and initiatives for immigrant services. This is highly illegal and unconstitutional, and the defendants clearly are in violation of California law, Affirmative Action. Prior complaints in the Court have been about affirmative action for Negro's and affirmative action was no longer necessary for opportunities for minorities was stated to have been equalized or at least are not worth the "cost" of depriving deserving individuals of jobs based on their demographics instead of their ability.  Tax evasion comes to mind regarding the defendants laws and in the words of Justice Frankfurter, "because important issues are raised concerning the rights of individuals and the power of the State Legislature." The plaintiff asks this Court to address the defendants conduct against the Speech or Debate Clause and question the scope of immunity afforded defendants legislatures under the Clause.  This is a conspiracy to deprive the vulnerable communities of the California Negro race and plaintiff of liberty, happiness and the enjoyment of life and the opportunity to procreate. The deprivation of the Negro races' state funds similarly to that of the illegal immigrant is a violation of 42 U.S.C subsection 1981, 1983 and 1983(3). Legislators are not immune from suit under 42 USCS § 1983 by voter alleging that failure of legislature to reapportion districts for more than 55 years to adjust to population shifts deprived plaintiff of due process and equal protection of law in his right of suffrage. Dyer v Abe (1956, DC Hawaii) 138 F Supp 220, revd on other grounds (1958, CA9 Hawaii) 256 F2d 728. The Court must hold, the defendants reapportion of districts are matters close to the core of the constitutional system and that interest of the State, when it comes to voting, is limited to the power to fix qualifications. Edwards V. California, 314 U.S. 160, 184-185.

The defendant's discrimination continues locally by the Alameda County Board of Supervisors because the "Board" is benefiting financially by the defendants immigration laws. Due to the inequitably of services from American doing jobs for foreign nationals the defendants and specifically the Democratic National Committee has spent so much money on their "race'" of Mexican and Central American illegal immigrants. The defendants have provided illegal immigrants with the tax benefits, medical help, education all while they are using the plaintiff and the Negro races tax dollars. While shielding them from state and federal laws. The plaintiff asks the Court to hold, defendants violate affirmative action in education, the argument for merit here in these complaints because it's the employment setting; as well as school admission settings. The two legal systems one for the American Negro and the other for illegal immigrants from Mexico and

Central America, have different paths of citizenship. SB54 and SB1310 prohibit state or local law enforcement agencies from the following action, detaining an individual on a hold request from the federal government unless there is a felony or a warrant; state employees cannot transfer undocumented immigrants into federal custody unless they've been convicted in the last 15 years of a crime; Asking about a person's immigration status or sharing any information with federal immigration authorities is prohibited. SB54 was written in 2017 Congress introduced legislation know as Sentencing Reform Act in 2017. Again, two different laws for two races of people and both laws are written and supported by the defendants.

Over the past 25 years the legislature in California, the defendants, have been using the Alameda County Board of Supervisors to assist in laundering federal funds to illegal immigrants. The Alameda County Social Services Agency (SSA) has participated in receiving grants for their program from the state and then dispensing the money to illegal immigrants while accepting grants from the defendants to add new prison guards and increase bed count in 2020. Also in 2020 the money funding the program comes from the defendants AB1593.  Here, the defendants are Americas and political figures but they are advocating for a foreign race and have created laws to protect, assist and provide federal assistance by categorizing the illegal immigrant as a minority group, for the allocation of federal funds.  This is again, how locally in Alameda the county the plaintiff and the Negro race is impacted disproportionately by two separate judicial systems. The Court must hold that the Civil Rights statues can award damages to a witness injured by a committee exercising legislative power. The plaintiff asks the Court to look at past holdings in treason cases to see if facts of the complaints at bar are consistent with such a long-standing and wise tradition that legislators that are not immune from legal responsibility for their intra-legislative statements and activities? The Court's holding should also point out that Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377, held legislative immunity to have some limits. There are past cases where the legislator's conduct so far exceeds the bounds of legislative power that they were held personally liable in a suit brought under the Civil Rights Act. The plaintiff substantially agrees with prior Court's reasoning and its conclusions. The plaintiff asks the Court the questions regarding the defendants "political" Acts of creating segregated laws. Justice Oliver Wendell Holmes, questions whether words used in circumstances are clear and present danger. Defendants Pelosi's "there are jobs in America, American's don't won't o do" the meaning and scope of the words meet the "clear and

present danger" tests. Whether the defendants words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent and so does this Court in its holdings of defendants legislatives evils and the question is of proximity and degree. In Schenck, Justice Holmes clearly distinguished the clear and present danger test from the bad tendency test — which was predominant in English common law and would be articulated in Gitlow v. New York (1925).

The alternative judicial approaches and doctrinal tools as it relates to the "preferred positions" of certain freedoms of presumptions are unconstitutional? The defendants local and state depravations the plaintiff spoke of earlier, leaves the plaintiff left with no doubt that  SB54 and SB1310  is the power given by the defendants as an "instrument of arbitrary suppression of free expression on views of national affairs".  Once the Court answers the plaintiffs questions, it will be clear the Court will hold, the defendants state and federal government officials cannot be given power arbitrarily that SB54 and AB1310 have to suppress free expressions, no matter under what cover of law they purported to act. Cox v. New Hampshire, 312 U.S. 569 (1941). Moreover, the plaintiff is mindful of other important interests the defendants may have in implanting SB54 and SB1310, such as public order but then the question then, is if interference. With free expression or ideas is not found to be overbalancing considerations by the Court why do the defendants have two different laws which offer two different outcomes when dealing with the defendants' employees? More important to the defendant's laws in SB54 and SB1310, the interests deemed to require regulation of speech? The defendants cannot force the plaintiff or the Negro race to publicly proselyte or force upon them religious arguments that the illegal immigrant from Mexico and Central America is "essential" to the American Negro's way of life! Defendant a public official DeLeon approved this law based on his religious views which brings depravation upon the plaintiff and the Negro race. The defendants must act in goof faith and maintain the public peace, but it must be done for and in equally indispensable ends to maintain a modern community of life. The Court must hold, illegal immigrants from Mexico and Central America are not being denied equal protection of the laws by not receiving federal assistance in the form of benefits. In Lum v. Rice, "the purity and integrity of the white race"  the Court found no difference between state laws involving the denial of equal protection of Negro children and "pupils of the yellow races"  who were any different,  it held,  it is within the discretion of the state in regulating its public

schools, and does not conflict with the Fourteenth Amendment. Plaintiff is relying on Dred Scott and Plessy decisions which are similar to the complaints before the Court. The defendants separate but equal laws are declaring and mandating on state property and their employee's workplace to segregate. A California workplace policy.  This is in violation of the equal protection clause of the Fourteenth Amendment.

To Continue with the defendants regulating the plaintiff's "free speech". To what method did the defendants use to achieve such ends to define an illegal immigrant from Mexico and central America, as an "essential" workplace standard?  This gives an official authority to censor the content of a speech of the plaintiff that differs from the one the defendants have limited to the terms of their employees collective bargaining agreements they have with their employee unions.  This is a discriminatory workplace practice? These doctrines known as SB54 and SB1310 are *proxy* to expressions of "substantive evil".

"essential workers" are what the defendants call immigrants in the U.S. illegally. The defendants violate the plaintiff's and Negro races First Amendment "rights" to a public forum of equal access or guarantee of access to the same public places similar to the illegal immigrant from Mexico and Central America. The plaintiff's broad positions are that the defendants must permit access to the same forms, services, work hours, jobs because our government, the defendants have an affirmative obligation to make, Black Lives Matter, and therefore, the defendants must provide equal access to public places and not to control the content to free speech and discriminate against American whom they don't believe to be, "essential workers". Under the narrow view of the defendants "essential" status, they have imposed a flat ban on the use of public property which has been only granted to the illegal immigrants from Mexico and Central America. For example, "joe" the segregationist stated on August 6, 2020, "Unlike the African American community, with notable exceptions, the Latino community is an incredibly diverse community with incredibly diverse attitudes about different things." "You go to Florida; you find a very different attitude about immigration than you do in Arizona. So, it's a very diverse community." Joe's statement is a perfect example of a discussion in a public forum problem. First, is supposed to be an open democratic society but clearly "joe's" public form can be described as commandeering for his  "political" and evil speech.  Second, that only confusion can result from distinguishing sharply between 'speech pure – no concern with censorship' and speech plus – concerned with the content of what is said, and

third what is the required effect of defining the illegal immigrant as an "essential worker" and does such a rule pose a problem of formidable practical difficulty? Due process and equal protection are the actions by the defendants, here they are being challenged as violating constitutional restraints. First, the defendants, the state of California created a constitutional guarantee for employment and federal college scholarships, free state Medicare and free state welfare in the form of $834 to $1400 a month per illegal immigrant.  The concern extends beyond the applicability of any constitutional guarantee to the state action to the restraints effective against private conduct. Another concern is Congress is not involved in the immigration legislation and not the Court must enforce and elaborate in its holdings the provisions of the post-Civil War Amendments that are applicable here. The plaintiff has constitutional guarantees which "limit private actors and State actions". The Constitutional guarantees to conduct afforded to the plaintiff is in the 14th Amendment and the 15th Amendment. For example, the prohibitions of subsection 1 of the 14th Amendment began with "No State **Shall not**…" The Court must hold, the Amendments emphasize the essential dichotomy set forth in the Amendments between depravation by the defendants legislation which is the Constitution of the State of California, is subject to scrutiny under its provisions, and private conduct, however discriminatory and unlawful, against which the 14th Amendment offers no shield, Jackson v. Metropolitan Edison Co., 419, U.S. 345 (1974).

Immunity for illegal immigrants was passed in San Francisco California in 1989. "City and County of Refuge" Ordinance (also known as the Sanctuary Ordinance).  In 2017 SB54 was passed by the California legislature. This bill does not allow state and local law enforcement agencies to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes. Moreover, the United States Immigration and Customs Enforcement ICE provide the illegal immigrant in department custody written consent form that explains the purpose of the interview.  Their policies allow for upon receiving any ICE hold inform the illegal immigrant whether the department intends to comply with the request. It has a state policy that the Department of Corrections and Rehabilitation shall not restrict access to any in-prison educational or rehabilitative programming or shall not authorize hold requests transfer request, notification request, or civil immigration warrant against the individual. This is a systemic racist pattern of offering the illegal immigrant by not enforcing current

laws on one race while keeping the full force of the law while applying a knee on the American Negro's throat. Below are the defendant's employees bill of rights, and they are very similar to the immunity the defendants offer the illegal immigrant in SB54 and SB1310.

In 1991, S.1043 Police Officer's Bill of Rights Act of 1991 - Amends the Omnibus Crime Control and Safe Streets Act of 1968 to provide that, except when on duty or acting in an official capacity, no law enforcement officer (officer) shall be prohibited from engaging in political activity or be denied the right to refrain from engaging in such activity. Sets forth minimum standards that shall apply when an officer is under investigation or is subjected to questioning under circumstances that could lead to disciplinary action, including that (1) questioning be conducted at a reasonable hour, and take place at the offices of those conducting the investigation, with exceptions; (2) the officer under investigation be informed in writing of the nature of the investigation prior to questioning; (3) any questioning be for a reasonable period of time, allowing for reasonable periods for rest and personal necessities; (4) such questioning be recorded in full in writing or by electronic device, and a copy of the transcript made available to the officer under investigation; and (5) the officer be entitled to the presence of counsel or other individual at the questioning.

 Laws passed by the defendants (members of Congress) in 2012 allows for states to apply for grants totaling $81 billion dollars to build prisons.  A study of Prison Policy found in 2014 found the imprison rate for American Negro women was twice that of white women. In October 2015, a research director at the prison initiative published of the 1,800 juvenile facilities held 48,043 youth and 44% were Negro youth but they make up 16% of all youth in the United States. Nationally, the youth rate of incarceration was 152 per 100,00; Black youth rate was 433 per 100,000. Segregation is systemic in the United States caused …Obergefell v. Hodges, 576 U.S. 644. In 2017 the Senate introduced, Sentencing Reform and Corrections Act of 2017 which created new mandatory minimum prison terms, to make resentencing of a convicted crack cocaine offender sentenced before August 3, 2010 and to establish a mandatory sentencing enhancement for a drug offense. to make the Fair Sentencing Act of 2010 retroactive to permit resentencing of a convicted crack cocaine offender sentenced before August 3, 2010. To show further how segregated the 2010 Fair Sentencing Act was written to further degrade the American Negro's. The bill

reduced the criminal penalty for fentanyl and heroin users and traffickers.  Pfister v Arceneaux (1966, CA5 La) 376 F2d 821, 10 FR Serv 2d 124, cert den (1967) 389 US 986, 19 L Ed 2d 482, 88 S Ct 469 and (1967, CA5 La) 379 F2d 292. If legislative defendants authorized raids on offices of organization in violation of 42 USCS § 1983, it would have serious bearing on question whether chairman and members of committee were performing legitimate legislative activity.

The plaintiffs is asking for preventive relief and damages against a number of defendants, including being awarded California pledge delegates. The democrats need 1991 for the democratic nomination and a majority of 3979 pledged delegates from primaries and caucuses to claim presidential victory. The Fourteenth Amendment inescapably imposes upon this Courts to exercise judgement upon all the complaints before the Court, whether they offer fairness in the laws. Plaintiff's complaint is that the defendants exclude immigrants from Mexico and Central America from being charged with crimes by giving them immunity. Plaintiff believes that the judicial judgement of the Court in applying the Due Process Clause must move and lean toward the notion that justice cannot be delegated to one race over others based upon the idiosyncrasies of a merely personal judgement. Furthermore, the plaintiff looks to Justice Black's decision in Twining which reaffirms my requests to have the Court lean towards justice in this claim.  In these complaints, the constitutional theory spelled out in Twining v. New Jersey, 211 U.S. 78, the Court is endowed by the Constitution under 'Natural law" periodically to expand the contract constitutional standards to conform to "civilized decency and fundamental liberty  and justice.

The Courts power to prevent state violates of the plaintiff's individual civil liberties is guaranteed by the Bill of Rights. Since Marbury v Madison was decided, courts have strike down legislative enactments which violate the Constitution for the Negro's. In Griffin v. California, 380 U.S. 609 (1965), the court found it unconstitutional that a rule permitting comment on the defendants' failure to testify.  Similar to the unconstitutionality in Griffin v. California. San Francisco, because California passed the following laws, in 1997 California Food Assistance Program of 1997 (AB 1576), in 1998 Cash Assistance Program (AB2779), in 2001 Public Post Secondary Education tuition, in 2011 Employment Acceleration Act (SB 1236), in 2011 California Dream Act/Scholarship Eligibility, (AB 130), in 2011 California Dream Act/Student Financial Aid (AB 131), in 2013 TRUST Act (AB 4), in 2013 Medi-Cal Eligibility (ABX1 1 and SBX1 1), in 2013 Retaliation against Immigrant Workers (AB 263), in 2013 Admission to Practice Law (AB 1024), in

2014 Sentencing (SB 1310), in 2014 Registration for Foreign Labor Contracting (SB 477), in 2014 Restoring Higher Education Access and Affordability (SB 141), in 2014 Expanding Access to Professional Licenses (SB 1159), in 2016 law enforcement & immigration policy enforcement ICE-AB2792, in 2017 SB54, in 2018 the Regents of University of California v. DHS and the State of California files a Supreme Court brief in representing illegal immigrants for affirmative action laws for illegal immigrants, 2019 in the law allows an earned income tax credit against personal income tax and a payment from the Tax Relief and Refund Account for immigrant undocumented and in 2019 the Regents of University of California v. DHS and the State of California files a second Supreme Court representing illegal immigrants affirmative laws for education and every state(s) health and food stamp benefits. The defendant's legislative actions cause and has caused the diminution of American jobs and wages in such that they impair and disrupt the employment market by filling all jobs with illegal immigrants. These legislations impair and disrupt the market of goods flowing from or into the world's marketplaces. For example, the defendant's legislations are all are codified as, the California Constitution. On October 5, 2017 the defendants, approved California Senate Bill No.54 which prohibit state and local law enforcement agencies, including school police and security departments, from investigate, interrogate, detain, detect, or arrest persons. This legislation was passed one day after the Unites States Congress passes Senate Bill S.1917, Sentencing Reform and Corrections Acts of 2017. Section 104 it has a **shall apply**… that allows for the state to enforce this law on any offences prior to the enactment of Senate Bill S.1917. Therefore, any black man like the plaintiff, if charged with any crime prior to the enactment of Senate Bill S.1917 must answer to this laws standard, evidence standards and the "intent" clauses of that law based on those actions months or years prior to the law going into effect. California law, SB54 was written by the democratic leaders. Senate Bill S.1917 was co-sponsored by the democratic party. Senators Diane Feinstein and Senator Kamila Harris, both democrats supported two bills. One bill on the path to citizenship for illegal immigrants and one bill taking away all citizen privileges and it's for the American Negro's.

The defendant's legislation allows for genocide and this would not be the first time this conversation was in the Court. There was a time when the U.S. Government argued that American who had reservations on Oklahoma land, but they no longer exist and the federal government agrees that genocide was intentional but argued that the results of genocide are legal today and should be

extended. Let me be clear, my use of the word "genocide" to characterize these U.S actions follows the precise meaning of "genocide," as defined by Raphael Lemkin, the international lawyer who coined the word and brought it to bear in international law. Lemkin was later an advisor to Nuremberg War Crimes Chief Prosecutor (and U.S. Supreme Court Justice) Robert H. Jackson, to guide the trials of Nazis accused of genocide. In short, Lemkin's work on genocide is of major significance. The defendant's legislation allows for the disintegration of the plaintiff and he Negro race's political and social institutions, of culture, language, national feelings, religion, and the economic existence of their race as equal of all races and national groups. The defendant's legislative acts of genocide are directed against the Negro race as an entity. Therefore, the Court must hold, the defendants are guilty of "genocide" they characterize the Negro race in two different U.S laws that follows the precise meaning of "genocide," as defined by Raphael Lemkin. The international lawyer who coined the word and brought it to bear in international law. Lemkin was later an advisor to Nuremberg War Crimes Chief Prosecutor (and U.S. Supreme Court Justice) Robert H. Jackson, to guide the trials of Nazis accused of genocide. In short, Lemkin's work on genocide is of major significance and the Court must hold the defendants are guilty of democide of the American Negro race, the plaintiff. U.S. the plaintiff relies on the following federal laws. The Indian Removal program, the Creek Treaty of 1833 specified that the Creek Nation would hold their new lands "in fee simple...with the right of perpetual self-government.  And the Fourteenth Amendment, amendment (1868) to the Constitution of the United States that granted citizenship and equal civil and legal rights to African Americans and slaves who had been emancipated after the American Civil War, including them under the umbrella phrase "all persons born or naturalized in the United States.

The text(s) of each legislation above mandates that all 482 Cities and the Cities employees from using City funds or resources to assist Immigration and Customs Enforcement ICE in the enforcement of Federal immigration law. Here, the defendants actions are similar to the Griffin case in that other public officials believed they had complete immunity for his actions. Even a policeman who exacts a confession by force and violence can be held criminally liable under the Civil Rights Act, as we ruled only the other day in Williams v. United States, 341 U.S. 97, 71 S.Ct. 576. Yet, the plaintiff asks the Court to hold that no matter the extremes to which the defendants may go they need to be answerable to the plaintiff and the Negro race under the civil rights legislations. The necessary consequence of the Court's ruling of the statutes will be based on the federal

immunity laws; as well as, whether the plaintiff's constitutional rights have been impaired. The question is whether the defendants have immunity from their "political" acts as they legislated in their traditional roles as the politicians of California? It is one thing to give great leeway to the defendants right of speech, debate, and investigation when creating new legislation. But when the defendant's perverts its powers as they do their sexual desires, their legislation brings down the law on plaintiff and the Negro race; therefore, the whole weight of California government. Their legislation is for illegal or corrupt purposes and is in violates the First Amendment, Fifth Amendment, Due Process Laws, the Commerce Clause and the Fourteenth Amendment rights of the plaintiff and the Negro race. The purpose of this civil rights legislation is to secure federal rights against invasion by officers so the illegal immigrant will no b deported under U.S. Federal Immigration laws. The plaintiff sees no reason why any officer of government should be higher than the Constitution from which all rights and privileges of an office obtain.

SB54 is discriminatory legislation that was approved by the California Governor, known as *Moonbeam.* This legislation was approved on October 05, 2017 and this legislation is for a "private" party contract with a foreign nation of a people who are in the county illegally. SB54 has a "*shall not*" status in SB54-7284.6. (a) California law enforcement shall not:

(1) California law enforcement agencies *shall not*: Use agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes.

(2) California law enforcement agencies *shall not*: Inquiring into an individual's immigration status.

(3) California law enforcement agencies *shall not*: Detaining an individual based on a hold request.

(4) California law enforcement agencies *shall not*: Providing information regarding a person's release date or responding to requests for notification by providing release dates or other information unless that information is available to the public, or is in response to a notification request from immigration authorities in accordance with Section 7282.5. Responses are never required, but are permitted under this subdivision, provided that they do not violate any local law or policy.

(5) California law enforcement agencies *shall not*: Providing personal information, as defined in Section 1798.3 of the Civil Code, about an individual, including, but not limited to, the individual's home address or work address unless that information is available to the public.

(6) California law enforcement agencies shall not: Making or intentionally participating in arrests based on civil immigration warrants.

(7) California law enforcement agencies *shall not*: Assisting immigration authorities in the activities described in Section 1357(a)(3) of Title 8 of the United States Code.

(8) California law enforcement agencies shall not: Performing the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy, whether formal or informal.

(9) California law enforcement agencies *shall not*: Place peace officers under the supervision of federal agencies or employ peace officers deputized as special federal officers or special federal deputies for purposes of immigration enforcement. All peace officers remain subject to California law governing conduct of peace officers and the policies of the employing agency.

(10) California law enforcement agencies *shall not*: Use immigration authorities as interpreters for law enforcement matters relating to individuals in agency or department custody.

(11) California law enforcement agencies *shall not*: Transfer an individual to immigration authorities unless authorized by a judicial warrant or judicial probable cause determination, or in accordance with Section 7282.5.

(12) California law enforcement agencies *shall not*: Provide office space exclusively dedicated for immigration authorities for use within a city or county law enforcement facility.

(13) California law enforcement agencies *shall not*: Contract with the federal government for use of California law enforcement agency facilities to house individuals as federal detainees, except pursuant to Chapter 17.8 (commencing with Section 7310).

(14) California law enforcement agencies *shall not*: Notwithstanding the limitations in subdivision (a), this section does not prevent any California law enforcement agency from doing any of the following that does not violate any policy of the law

enforcement agency or any local law or policy of the jurisdiction in which the agency is operating.

(15) California law enforcement agencies *shall not*: Investigating, enforcing, or detaining upon reasonable suspicion of, or arresting for a violation of, Section 1326(a) of Title 8 of the United States Code that may be subject to the enhancement specified in Section 1326(b)(2) of Title 8 of the United States Code and that is detected during an unrelated law enforcement activity. Transfers to immigration authorities are permitted under this subsection only in accordance with paragraph (4) of subdivision (a).

(16) California law enforcement agencies *shall not*: Responding to a request from immigration authorities for information about a specific person's criminal history, including previous criminal arrests, convictions, or similar criminal history information accessed through the California Law Enforcement Telecommunications System (CLETS), where otherwise permitted by state law.

(17) California law enforcement agencies *shall not*: Conducting enforcement or investigative duties associated with a joint law enforcement task force, including the sharing of confidential information with other law enforcement agencies for purposes of task force investigations.

(18) California law enforcement agencies shall not: The primary purpose of the joint law enforcement task force is not immigration enforcement, as defined in subdivision (f) of Section 7284.

(19) California law enforcement agencies *shall not*: The enforcement or investigative duties are primarily related to a violation of state or federal law unrelated to immigration enforcement.

(20) California law enforcement agencies *shall not*: Participation in the task force by a California law enforcement agency does not violate any local law or policy to which it is otherwise subject.

(21) California law enforcement agencies *shall not*: Making inquiries into information necessary to certify an individual who has been identified as a potential crime or trafficking victim for a T or U Visa pursuant to Section 1101(a)(15)(T) or 1101(a)(15)(U) of Title 8 of the United States Code or to comply with Section 922(d)(5) of Title 18 of the United States Code.

(22) California law enforcement agencies *shall not*: Giving immigration authorities access to interview an individual in agency or department custody. All interview

access shall comply with requirements of the TRUTH Act Chapter 17.2 commencing with Section 7283.

(23) California law enforcement agencies *shall not*: If a California law enforcement agency chooses to participate in a joint law enforcement task force, for which a California law enforcement agency has agreed to dedicate personnel or resources on an ongoing basis, it shall submit a report annually to the Department of Justice, as specified by the Attorney General.

(24) California law enforcement agencies *shall not*: All law enforcement agencies shall report annually to the Department of Justice, in a manner specified by the Attorney General, the number of transfers pursuant to paragraph (4) of subdivision (a), and the offense that allowed for the transfer, pursuant to paragraph (4) of subdivision (a).

(25) California law enforcement agencies *shall not*: All records described in this subdivision shall be public records for purposes of the California Public Records Act (Chapter 3.5 (commencing with Section 6250)), including the exemptions provided by that act and, as permitted under that act, personal identifying information may be redacted prior to public disclosure. To the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation, that information shall not be disclosed.

(26) California law enforcement agencies *shall not*: If more than one California law enforcement agency is participating in a joint task force that meets the reporting requirement pursuant to this section, the joint task force shall designate a local or state agency responsible for completing the reporting requirement.

(27) California law enforcement agencies *shall not*: The Attorney General, by March 1, 2019, and annually thereafter, shall report on the total number of arrests made by joint law enforcement task forces, and the total number of arrests made for the purpose of immigration enforcement by all task force participants, including federal law enforcement agencies. To the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation, or would endanger the successful completion of the investigation or a related investigation, that information shall not be included in the Attorney General's report. The Attorney General shall post the reports required by this subdivision on the Attorney General's Internet Web site.

(28) California law enforcement agencies *shall not*: This section does not prohibit or restrict any government entity or official from sending to, or receiving from, federal immigration authorities, information regarding the citizenship or immigration status, lawful or unlawful, of an individual, or from requesting from federal immigration authorities immigration status information, lawful or unlawful, of any individual, or maintaining or exchanging that information with any other federal, state, or local government entity, pursuant to Sections 1373 and 1644 of Title 8 of the United States Code.

(29) California law enforcement agencies *shall not*: Nothing in this section shall prohibit a California law enforcement agency from asserting its own jurisdiction over criminal law enforcement matters.

The Court must hold in favor of the United States Constitution's shall not ... clause and therefore, the Constitution TRUMP's the defendants lack of understand of the fundamentals of the Constitution and finds DACA, DAPA, SB54, AB1593, AN194 and One California, unconstitutional.

 The language of the Contract Clause appears unambiguously absolute.

"No State **shall not** . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Constitution Article 1 subsection 10.

The Contract Clause is desuetude with the adoption of the Fourteenth Amendment and is part of the Constitution and settled law of this Court. It is that the interdiction of SB54, AB194, AB1593, DACA, CAPA, One California are impairing obligations of contracts. Plaintiff is aware these legislative acts do not prevent the defendants, the State of California from exercising such powers for the promotion of the common weal, but the Contract Clause is absolute of laws impairing contracts.  It must be understood the Court must impose limits upon the power of the defendants to stop the "encouragement of racial discrimination" from the above legislation as to the employer to the employees.   Defendants directing their employees to segregate in the first two words of in SB54-7284.2.2 are shall not... and the California Legislation known as SB54 is the "encouragement" of private foreign discrimination for the illegal immigrants from Mexico and Central America. Illegal immigrants from Mexico and Central America share the same race and heritage as the defendants. SB54 gives illegal immigrants the opportunity to deny crimes after they have committed and is race based from the defendant's legislative enactments which violate the plaintiff due process rights and the Constitution. But for not the Shall not ... in SB54 the illegal immigrant would be

charged with 3 strikes for multiple offences, clearly the first crime is of entering into the united states illegally and if illegal immigrants are caught, they can be deported under federal immigration laws. Therefore, the Shall not … is a guarantee the illegal immigrant will not have any contact with police. This is in violation of the plaintiff's and the Negro race's Fourth Amendment rights and "conduct that shocks the conscience" of the Court. The "incorporation" of "specific" rights afforded to DACA, DAPA, SB54 and Sanctuary City ordinances for illegal immigrants violate the plaintiff's Fourteenth Amendment Rights? Plaintiff's claims the defendant's emphasis that the plaintiff and his Negro race be predictability the default criminals of all crimes alleged in criminal complaints by California law enforcement and state officials, judges, federal police and district attorney's offices. SB54 is in violation of the Due Process Clause legislation it gives this plaintiff protection against the federal governments, procedure(s) within SB54. These 'procedures' from state legislation infringe upon the plaintiff's and Negro race constitutional rights.

 Clearly the Court must agree, the security of one's privacy against arbitrary intrusion by the defendants who are legislators of the state violates the Due Process Clause. This concept of ordered liberty and as such is enforceable against the states by Courts. Congress gave no authority for the DHS to meddle in each states rights issue and create immigration laws for any state.  Congress give no legislative indication that DHS can, at will, create its own categorical laws or financial policies based on deferred action. Nor did Congress give a state or city employee the authority to grant immunity for a foreign nation similarly, Congress did not give DHS the authority to institute segregation in any of the state(s).

The plaintiff is aware that Congress has certain classes of individuals eligible for deferred action. The Court is aware of 8 U. S. C. §§1154(a)(1)(D)(i)(II), (IV) (certain individuals covered under the Violence Against Women Act are "eligible for deferred action"); Victims of Trafficking and Violence Protection Act of 2000, 114 Stat. 1522 ("'Any individual described in subclause (I) is eligible for deferred action'"); Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, §423(b), 115 Stat. 361 (such spouse, child, son, or daughter may be eligible for deferred action); National Defense Authorization Act for Fiscal Year 2004, §§1703(c)(1)(A), (2), 117 Stat. 1694– 1695 (such spouse or child shall be eligible for deferred action). These federal laws allow for a legal pathway to citizenship and the federal laws above have been working for this county for some time. The defendant's legislations, memorandums and state amendments to the California

Constitution are dealing with the plaintiff and the Negro races rights protected by the Constitution. The right to free speech and the right to vote down any laws deemed in favor of the plaintiff or the Negro race, like DACA, AB130, AB131, AB1593, AB2792, SB1159, SB141, SB477, SB1236, AB1024, AB263, AB2279 and AB1576. The defendants legislations are detrimental to the plaintiff and the Negro race's protection from rights and this Court cannot sustain such legislative acts. The defendants have brought the weight of the law on themselves regarding its authority to deny the plaintiff and the Negro race the rights protected by the Constitution. The Court must think of no reason why the defendants should be immune from the laws. Yes, that is the extent of liability unfortunately sought to be imposed on the defendants under 8 U.S.C. subsection 43, 8 U.S.C.A. subsection 43.

Past practice does not, by itself, create executive power. Medellín v. Texas, 552 U.S. 491, 532 (2008) quoting Dames & Moore v. Regan, 453 U. S. 654, 686 (1981). The defendant's actions reek of discrimination and violations of plaintiff the Fourteenth Amendment rights through the DHS issuing guidance's to the DHS employee's through memorandums which have racial classifications which are 'suspect'. With the racial criteria being aligned with the need of the illegal immigrants status as an individual to be never suspected of crimes; moreover, DHS conjured up DACA and it was announced in a June 15, 2012 in a memorandum from Secretary of Homeland Security Janet Napolitano,[4] entitled Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children. Although each legislation is not per an individual's **actions**, the legislation is written for an entire race of people's actions, qualities and even the immunity applies to the race of Mexican or Central American heritage. Unlike S.1917 which address the **actions** of the legislation to 'person', 'prisoner' or an 'activity of a person'. Based on the two laws written by the defendants, the actions of each race for the same crime allows for separate but equal accommodations in public courts, public paces when confronted by police, in schools the immigrants have far superior educational opportunities. The courts knowledge of the segregation cases before the courts over the years, can be assured the Supreme Court has not dispensed the last court case of, segregation by the states.

U.S. Immigration and Customs Enforcement has a document called, ICE Enforcement and Removal Operation Report.  Secretary of Homeland Security Janet Napolitano, unconstitutional prosecutorial discretion by creating a report,

which is an illegal contract with the illegal immigrants created by the DHS.  By formulating new rules for her employee's regarding the illegal Mexican and Central American immigrants violates the National Labor Relations Act of 1935. Undoubtably the scope of the defendant's powers must be considered in the light of their duel capture and release polices and laws they have for two races of a people. Again, the defendants created two laws and are advocating in Supreme Court of illegal immigrants as essential to America while letting the America's know the Negro is a criminal. This is race based legislations, they are invalid, legislations. The defendants duel systems may not extend so to embrace effects upon interstate commerce so indirect and remote that to embrace them, the two complex societies affected by the duel system does effectually obliterate the obligation between what was a national immigration enforcement and terrorism agency into a completely different centralized governmental agency.  An agent of proxy vote on state affairs for the state of California. Which violates the Enforcement at of 1870, which made it a crime for a public officer and private person9s) to obstruct the exercise of the right to vote. The Court must hold, the defendant's actions are in violation of the plaintiff's rights as the are affecting the supervisions of the electoral process as it relates to the federal governments obligation to supervise the electoral process. With the 2020 election two and a half months away, the Court must find this complaint meets strict scrutiny standards.  The U.S. Immigration and Customs Enforcement and Removal Operations (ERO), the (ERO) implementation memorandum expanded ICE's enforcement focus to include removable aliens who (1) have been convicted of any criminal offense; (2) have been charged with any criminal offense that has not been resolved; (3) have committed acts which constitute a chargeable criminal offense; (4) have engaged in fraud or willful misrepresentation in connection with any official matter before a governmental agency; (5) have abused any program related to receipt of public benefits; (6) are subject to a final order of removal but have not complied with their legal obligation to depart the United States; or (7) in the judgment of an immigration officer, otherwise pose a risk to public safety or national security. The Department continued to operate under the directive that classes or categories of removable aliens are not exempt from potential enforcement. The law is already in place to deal with illegal immigrants and creating a separate and unequal laws.  In S. § 1980 (pt. 3), 8 U.S.C. § 47(3), 8 U.S.C.A. § 47 (3) text states, if two or more persons in any State or territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, and person or class of persons

of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. The defendants are in violation of S. § 1980 (pt. 3), 8 U.S.C. § 47(3), 8 U.S.C.A. § 47 (3). The two persons here are the defendants as they conspire to suppress the Negro vote in the 2020 election by creating legislation in 2017 that set the Negro race on a path to prion and the path to citizenship offered as the head of the Negro, which was laid our on the platter of  California legislation SB54's **shall not**... employee mandate.

Secretary Napolitano explained in the memorandum she wrote on behalf of illegal immigrants was, " that the nation's immigration laws "are not designed ... to remove productive young people to countries where they may not have lived or even speak the language," especially where "many of these young people have already contributed to our country in significant ways," and, because they were brought here as children, "lacked the intent to violate the law."  Therefore, the state and federal employee's statement, that immigrants who grew up in this country to adult hood, because they came to this country as children, they lack intent to violate the law. The defendants defining a race of people as  "having the intent to violate the law", as they have done in the text of SB54 conspired as two or more persons to prevent by force, intimidation, or threat, any citizen, who is lawfully entitled to vote. The plaintiff and Negro race according to SB54, have the intent to violate the law and therefore, the Negro must be stopped and frisked. The democratic view of the Negro is consistent with every Democratic leader. Former Mayor of New York, a jew stated, So, one of the unintended consequences is people say, Oh my God, you are arresting kids for marijuana that

are all minorities. Yes, that is true. Why? Because we put all the cops in the minority neighborhoods. Yes, that is true. Why did we do it? Because that's where all the crime is, and the way you get the guns out of the kid's hands is to throw them up against the walls and frisk them.   Therefore, the defendants determined the prosecutorial discretion, which is used in so many other areas, is especially unjustified here, the Court must hold.  It is clear that restrictions on these rights to occupancy or employment of the sort to be implemented by the defendants is a private agreement between DHS and California on behalf of a foreign race that interferes with the commerce of the states. These legislations cannot be squared with the requirements of the Fourteenth Amendments afforded to the plaintiff and the Negro race. Congress accordingly adopted the Civil Rights Act of 1866 to assure the validity of the law and left the 15th Amendment specifically to address racial discrimination in voting.  Language in the defendant's legislations are of racial discrimination that is imposed by the defendants by local ordinance. They have written arguments on behalf of the foreign people in this country illegally and have appeared in the Supreme Court representing the illegal immigrants from Mexico and Central America.  This Court is aware of a similar argument written in recognition for American's to the principle, "All citizens of the United States shall have the same rights, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." Buchanan v. Warley, 245 U.S. 60 (1917).

Warley was held unconstitutional, the issue was for specific performance. A person of color who wanted to purchase land, but his color was the violation of the city's ordinance. Here in the Napolitano and Pelosi scheme to re-segregate California, their ordinances or guidance's are a contract for illegal Mexicans and central American with specific performances the police need to do or not to do. One is not to arrest these race of people(s) and what race of people(s) they need to concentrate on arresting. SB54 is a contract for employment and made to infringe on state(s) rights issues and it imposes a tax on the plaintiff and his race on behalf of the illegal immigrant. These taxes which is revenue for the general budget of the state of California and is used to take care of the California immigrant 'child' know an DACA and DAPA.  DACA and DAPA were created by a memorandum by a federal employee, defendant Napolitano who has no rights to give immunity let alone decide how state taxes are allocated. The Court has dealt with memorandums before. The memorandum from Justice Story regarding Section 25 of the Constitution which was common target of state's rights attacks. Dartmouth College v. Woodward, 4 Wheat. 518 (1819), the Court held the New

Hampshire Legislature's effect to modify the college charter a violation of the contract clause; and Sturges v. Crowninshield, 4 Wheat. 122 (1819), the Court once again relying on the contract clause invalidated a retroactive state insolvency legislation.  The plaintiff's complaints are of violations of state conduct which is authorized by judicial power that courts adopt state policies of segregation based on race. In adopting the states policies, the Courts adjudicate the constitution as presuming the states, similar to California, which have attachment of laws based on prejudices. California's prejudice against American citizen; California's jealousies of its citizens bonding together, loving, getting along and the state's prejudice between the citizen has eroded the California as a citizen and the plaintiff's right to state control. The defendants state interests have obstructed and controlled the rights, privileges and immunities of the plaintiff and the Negro race. But clearly the jealousies of the American citizen, is humbly in their success; and the defendants created laws that makes illegal immigrant equal. To defendants have created laws that gives immigrants free college, free daycare, free, Medicare, free tax deduction, free money in the amount to $815 a month and they represent them in all legislative laws. SB54 and DACA are affirmative action quotas which allow a race from Mexico and Central America to catch up to American's intellectually. Hence, the controversies in these claims are between states' rights versions citizen rights; between citizen rights and foreign-born person(s) rights and between the citizen verses California 's Legislature who are defending foreign rights over the American Constitution. These complaints enable the parties under authority of the Court and Congress to be heard and tried to determine if the United States citizen, the plaintiff and the Negro race,  are peonage to the state of California the state defends segregation for foreign illegal immigrants from Mexico and Central America.

The Court recalls when the divided nation was at war with England a strongly worded joint opinion was concluded by the Court. The Supreme Court of the United States does not extend under a sound construction of the Constitution. That section 25 of the act of Congress to establish the judicial courts of the United States the Supreme Court is or error in cases that exceed appellate jurisdiction. Basically, the defendants are relying on the Supreme Court to presume its segregation policies. The DACA and SB54 and any belief immigrants from Mexico have immunity must emanate in state courts.

By the defendants imposing DACA, AB1593, One California, AB54, AB194 and DAPA upon the plaintiff and the Negro they violate § 11011 Affirmative Action

Programs of the California constitution. Legislations supported by the University of California Board of Regents, in which Janet Napolitano is the current University President; moreover. The University of California Regents is supporting DACA and DAPA and have written favor discriminating against the plaintiff. Affirmative Action the California amendment eliminates employment discrimination and preferential treatment in public employment, public education, and public contracting on account of a person's or group's race, sex, color, ethnicity, or national origin. DACA and DAPA violate California law and the Plaintiff's state rights. The California College Promise Act, will receive funding that is needed to help support community college students for Latinos are entering higher education said Assembly member Jose Medina (D-Riverside), a member of the Latino Caucus and chairperson of the Assembly Committee on Higher Education. Plaintiff is reply on the laws in Title VI proscribes only those racial classifications that would violate the Equal Protection Clause if employed by a State or its agencies. Racial classifications call for strict judicial scrutiny. Nonetheless, the purpose of overcoming substantial, chronic minority underrepresentation in the medical profession is sufficiently important to justify petitioner's remedial use of race. The Court must hold that California law prohibits race from being used as a factor in university admissions. This case presents a challenge to the special admissions program of the defendants', AB194, SB54 AB1593, DACA, DAPA, Dreamers, which are designed to assure the admission opened up to any number of illegal immigrants from Mexico and Central America students from certain foreign countries who were not born in the U.S. The Superior Court of California sustained respondent's challenge, holding that petitioner's program violated the California Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment. In REGENTS OF the UNIVERSITY OF CALIFORNIA v. Allan Bakke, the California court held, by prohibiting the consideration of race only in passing upon Bakke's application. It must be remembered, however, that defendants my cross-complaint that its special program was constitutional. The Court must hold, the special program for illegal immigrants is unlawful and it has been affirmed by the California Supreme Court. There should be no doubt that the reason for the Courts holding is that the defendants use of race in consideration of *an*y candidate's application is unconstitutional. Moreover, in explaining the scope of its holding, the court clearly state that the defendants are prohibited from taking race into account in any way in making admissions decisions. Therefore, the defendants are in violation of California law against affirmative action. The defendants amended

their states constitution with laws listed above in these complaints and created memorandums as state actors, as employers for the illegal immigrants from Mexico and Central America.

The defendants legislation known as DACA, SB4 and DAPA were created from amendments and memorandums which have been implemented into law with racial inequalities that exist through the documents which discriminates against American who are not racially a Mexican or Central American, illegally in the U.S. The defendants discriminate in employment, the defendants discriminate in education, the defendants discriminate in educational funding, the defendants discriminate in mental health, the discriminate in choosing what race of people to spend federal tax dollars. The defendants must clarify with certainty, that in SB54 it has the immigrant as essential. This alone is discrimination in the workplace, education, housing, and false advertising. One reason for SB54 is the lack of human intelligence of the Mexican and Central American; in the defendants view affirmative action in light of varying poised levels of intellectual ability can be factors for the illegal treason's activities. It seems highly likely to the plaintiff genes and the Central American and Mexico environments have a lot to do with the race needed racial prefaces, CAFTA results in that region is a perfect example. DACA, SB54 and DAPA violate the plaintiff's Fourteenth Amendment rights, that no state should make or enforce any law which shall abridge the privilege and immunities of the citizen of the United States. The defendants legislation above specifically for illegal immigrants grants them privileges for public employees who have full freedom of association, to self-organize and the defendants have chosen through their Supreme Court writs and California legislation for the purposes of wage negotiation, labor standards and hours as if they were the defendants employees. The defendants even pay each illegal immigrant with a Cash Assistance Program set up in 1998. The Cash Assistance for immigrants is a state-funded program by the revenue generated by the states sales taxes that provides $834 to $1400 monthly cash benefits to illegal immigrants from Mexico and Central America, who are in the country illegally.

Therefore, the defendants who give illegal immigrants immunities are invalid and the defendants legislations are in violation of the Dred Scott decision by making all persons born within the United States and subject to its jurisdictions citizens of

the United States. The Court is aware, that the main purpose was to establish the citizenship of the Negro, that the citizenship is the same, and the privileges and immunities guaranteed by the clause are the same. The Fourteenth Amendment is clear regarding the unconstitutionality of SB54, DACA and DAPA, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Therefore DACA, SB54 and DAPA are all unconstitutional; they place obstacles absolute or otherwise inherent in the reproduction or childbirth of the plaintiff and the Negro race.  The Negro race has suffered disadvantages as a consequence of the defendant's interference or influence upon state authority of having a separate path of citizenship. These claims are that presumption of SB54, DACA an DAPA, infringes upon the due process rights of the plaintiff and the Negro race. Who desire and will establish paternity of children born to a Negro woman by a Negro man, and the laws infringe upon the constitutional rights or procreation based on "liberty?" The defendants offer and award substantive parental rights of other races for child conception for the purpose of establishing a society allegiance. The plaintiff and the Negro race continue to be frequent visitors to the Court seeking equality of right and SB54 and DACA, are unconstitutional as their immunities given to then by the defendants, are indistinguishable from the privileges the plaintiff an American citizen of the United States does not even have. SB54 and DACA put restrictions on the plaintiff and the Negro race by imposing unequal opportunities in education, healthcare and retirement benefits because the defendants legislation in privileges and immunities to a foreign race impair the rights, privileges and liberties of the plaintiff and the negro race. In Colgate v. Harvey, 296 U.S. (1935), the Court 's majority relied on the privileges and immunities clause to invalidate the Vermont State tax provision law. Here, the defendants have a tax provision law for naturalized citizens whose creates revenue for the state so other races of people can enjoy the natural rights of the citizen whose taxes are providing them unconstitutional; as well as immunities from prosecution and unconstitutional privileges. In Madden v. Kentucky, 309 U.S., 83 (1940), the Court reiterated that the clause protects all citizens against abridgement by states of rights of natural citizenship as distinct from the fundamental or natural rights inherent in state citizenship.

The Court must hold,  the defendants violate the Madden v. Kentucky, immunities and privileges clause which is limited to the citizen's the due process and equal protection clauses applying to any "person" whether they be an immigrant or whether they be a citizen. As to the free money and health benefits including Covid19 testing especially fit right into the privileges and immunities for plaintiff and Negro "citizens".  The Court must hold only American Citizens can receive testing from the $450 million dollar grant the defendants received from the CDC, which defendant Newson announced in a news conference the week on 7-26-2020.  Justices Bradley and Swayn have opinions that have found their way into the majority opinions regarding the due process clauses. They imposed substantive limits on state economic regulations and had been echoed by others dissenters who have embraced the substantive due process as a "hands off" policy towards state regulation of commercial affairs. The Court must hold these complaints are about the problems SB54, SB4, AB130, AB131, AB1310 and DAPA have as they relate to problems of procedure, especially of the immunity offered to immigrants. The procedures required by the States are a quota system. The Fourteenth Amendment's due process guarantee which is the fundamental principal of liberty and justice of the plaintiff and the Negro race was taken away by state employees who are offering foreign nationals immunity against crimes, speaks to the procedural processes within the employee's work duties.  There are no protections the "citizen".  The defendants legislations are absorbed by the Bill of Rights which guarantees and makes them applicable to the states laws which then must be applicable to federal laws. Justices Cardozo, Frankfurter and Harlen in the post-World War II years insisted that the Fourteenth Amendment did incorporate specific guarantees of the Bill of Rights of procedural due process concerns. SB54 , SB4, AB130, Ab130 and DAPA are in violations of the holding in San Antonio School District v. Rodriguez, and the No Child left Behind Act and California standardized tests and the Exit Exams in the defendant's school districts. They impose a lifetime of hardship for the Negro children the plaintiff's children who are denied their parents tax dollars for a similar education and non-combative encounters with the defendants' employees, Courts, and public schools which gives them labels of illiteracy which are the legislations goals.  The Court must hold, to be a member of the Democratic National Committee, you must uphold segregation in each state which is a democratic value. It must be clear to the Court that the plaintiff children and American Negro children will be

labeled with the stigma of illiteracy and will mark them for the rest of their lives by denying these American Negro children the basic educational and Health standards and guarantees the defendants offer the illegal immigrants from Mexico and Central America. The Commerce Clause is concerned here because the immunity offered by a union member involved has or will have collective bargaining agreements between the city(s) in which they work, Moreover, this is one of a sovereign state's legislation interpreting regulations of commerce between people within the state and between states and under this view the immunity a city employee is giving to a foreign national is invalid as it is the power to regulate commerce within that state and people of the state. In Hughes v. Oklahoma (1979), the Court invalidated an Oklahoma law prohibiting the interstate transportation of minnows taken from Oklahoma waters. The Court held that as long as reasonable, non-discriminatory alternatives exist that serve the states legitimate interest; therefore, the law is discriminatory. The Court must hold, immunity offered by a city(s) union employee impose on the state's a quota on jobs and wages impacting a single American worker primarily regarding personal consumption. Immunity given to an illegal immigrant has affected commerce and the cumulative impact of individual conduct, individual growth and individual procreations between husband and wife impacting American families. It affects the price and availability of work and living in California, thus impacting interstate commerce of people in the state and commerce between states.

The Court must be concerned that illegal immigrants are getting the following services that are tax free and their individual wealth is growing based on free services; since 1995.   All these legislations were written by California Latin Caucasus and the budgets for these unconstitutional immigrant programs comes from the state's General Fund. Therefore, the plaintiff's tax dollars are  going to one race of illegal Mexican and Central American immigrants and these laws violate Equal Protection Clause of the Fourteenth Amendment.  A provision of the California Constitution, and subsection 601 of Title Vi of the Civil Right Act of 1964, which provides, that no person shall on the ground of race or color be exclude from participating in any program receiving federal financial assistance. Therefore, the defendants legislation is invalid and unconstitutional. The defendants, the leaders of California's DNC and they violate Affirmative Action,

which is a California Constitution. This Court must hold, the defendants special "needs" program operated as a special racial quota, because the plaintiff a American Negro taxpayer and the Negro race who have tried to apply to these programs that are rated only against race the American Negro and the illegal Mexican immigrant; all the places in classes are reserves for one race, the illegal Mexican immigrant. The Courts declaring the defendants, all so called California leaders, cannot take race into account in making admissions decisions to the University of California college, Jr colleges; all the programs they offer is held to violate the Federal and State Constitutions and Title VI. As, this Court is aware Title VI provides only racial classifications that would violate the Equal Protection Clause if employed by a State or its agencies. Racial and ethnic classifications of any sort are inherently suspect and call for the most exacting judicial scrutiny.

While the defendant's goal in SB141 is to access to California colleges, universities and scholarships, as specified, for children who are U.S. citizens, but are forced to live abroad as a result of their parent's deportation. And the defendant's goal in AB4 is to, Limits local jails from holding immigrants set a minimum standard across state to limit holds. While AB 131 goal is to, immigrant students to participate in state-funded financial aid programs. While AB130 goal is to, Gives California public colleges and universities the opportunity to allow undocumented students who apply and compete for scholarship awards. While the legislation for Public Post-Secondary Exemption for non-resident tuition's goal is to, allows qualified undocumented students to pay the same amount as other students who grew up in California. While AB2779 goal is to, Cash Assistance for immigrant's state-funded program that provides monthly cash benefits. While AB1576 goal is to, provides state-funded food stamp benefits to qualified immigrants who are ineligible for federal food stamps. While AB1593 goal is to, allows an earned income tax credit against personal income tax and a payment from the Tax Relief and Refund Account for immigrant undocumented. While SB54 goal is to, prohibit state and local law enforcement agencies, including school police and security departments, from  investigate, interrogate, detain, detect, or arrest persons for immigration enforcement. While AB2792 goal is to, Act, prohibits a law enforcement official, as defined, from detaining an individual on the basis of a United States Immigration and Customs Enforcement hold. While SB141 goal is to access to California colleges, universities, and scholarships, as specified, for

children who are U.S. citizens, but are forced to live abroad as a result of their parent's deportation. The Court must hold, that race can never be a factor on the University of California Regents College System, State Courts, State Hospitals, State schools that receive state and federal funding. The plaintiff was excluded from AB157, AB2779, Public Post-Secondary non residence tuition, AB1236, AB130, AB131, AB4, AB1, SB1, AB263, AB1024, SB1310, SB 141, AB2792, SB4 and AB1593.

**California Legislation, AB1576** – California Food Assistance Program, provides state-funded food stamp benefits to qualified immigrants who are ineligible for federal food stamps, California Constitution in 1997.

**California Legislation, AB2779**- Cash Assistance Program, The Cash Assistance for immigrant's state-funded program that provides monthly cash benefits, California Constitution in 1998.

**California Legislation** - California Public Post-Secondary, Non-Resident Tuition, Allows qualified undocumented students to pay the same amount as other students who grew up in California, California Constitution in 2001.

**California Legislation, SB1236**- Employment Acceleration, Prohibits the state and local jurisdictions from requiring an employer to use E-Verify, California Constitution in 2011.

**California Legislation, AB130-** California Dream Act/Scholarship Eligibility Gives California public colleges and universities the opportunity to allow undocumented students who qualify for to apply and compete for scholarship awards, California Constitution in 2011.

**California Legislation, AB131**- California Dream Act/Student Financial Aid (AB 131), immigrant students to participate in state-funded financial aid programs, California Constitution in 2011.

**California Legislation, AB4**- Trust ACT-Limits local jails from holding immigrants set a minimum standard across state to limit holds, California Constitution 2013.

**California Legislation ABX1 and SBX1-**Medi-Cal Eligibility, expanded Medi-Cal to immigrants' adults, children, part of the Affordable Care Act in California 1.4 million illegal immigrants get FREEE healthcare California Constitution in 2013.

**California Legislation AB263**-Retaliation against Immigrant Workers, Provides work workplace rights employer retaliation. An employer's business license may

be suspended if the entity is found to be engaged in an unfair immigration-related practice Californian Constitution 2013.

**California Legislation AB1024** - Admission to Practice Law, allows individuals who meet state law qualifications for the practice of law regardless of citizenship or immigration status California Constitution 2013.

**California Legislation SB1310** – Sentencing, changed misdemeanor sentencing to a maximum of 364 days; thus, limiting deportation for non-citizens convicted of crimes California Constitution 2014.

**California Legislation SB141**- Restoring Higher Education Access and Affordability, access to California colleges, universities and scholarships, as specified, for children who are U.S. citizens, but are forced to live abroad as a result of their parent's deportation, California Constitution 2014.

**California Legislation AB2792** - law enforcement & immigration policy enforcement, Act, prohibits a law enforcement official, as defined, from detaining an individual on the basis of a United States Immigration and Customs Enforcement hold, California Constitution 2016.

**California Legislation SB54**, prohibit state and local law enforcement agencies, including school police and security departments, from investigate, interrogate, detain, detect, or arrest persons for immigration enforcement, California Constitution 2017.

**California Legislation AB1593**, allows an earned income tax credit against personal income tax and a payment from the Tax Relief and Refund Account for immigrant undocumented, California Constitution 2019.

These legislations violate the Fourteenth Amendment rights of the plaintiff and the Negro race by considering race or a race of a foreign national, or the race of another in providing states service and state admissions policies and guidance's not available to the plaintiff and the Negro race. The plaintiff does not carry the burdens of proving that he would have not been admitted to any of the legislative services but for the constitutional and statutory violations. The Supreme Court of California has affirmed that admissions programs in the state of California unlawful in the past and this Court must enjoin in those prior holdings and find the Regents of University of California was guilty of unlawful admissions practices in 1978. In that case the Regents of University of California v. Bakke, the Supreme Court held that the university used racial quotas in its admissions process, and it

was found unconstitutional.  Similar illegal immigration which burdens the taxpayer nationwide. According to the California Policy Center, the defendants staggering debt to the American taxpayer in state, county, municipal financial aid for illegal immigrants is $1.3 trillion dollars a year giving taxpayer money to take care of the wetbacks. The methodology used to compile this data is a fair estimate of the fiscal burden of illegal immigration on the United States taxpayers, The Federation of American Immigration Reform, 2017. Illegal immigrants seek refuge its communities and attempting to shield immigration violators from deportation, even those with criminal convictions. The methodology of the defendants atrocious measures passed by the defendants are, Senate Bill 54 effectively bars California law enforcement agencies from any meaningful cooperating with federal immigration officers. In particular the law prevents police and correctional officers from transferring an illegal alien into ICE custody unless the alien is a sex offender, or they have committed a significant crime in the past 15 years.

The legislations that affect commerce for the American taxpayer is the way commerce affects the illegal immigrant who has no financial burden and yields the benefits of the social cost of immigration in the United States economic contributions. The tax for the American is higher, the American pays for all the benefits of the illegal immigrants and come tax time, the immigrant get a refund for earned income credit they used, was the cash, medical, education and legal, the immigrant can use as income to get a federal refund based on the taxes the American paid. The tangible ramifications than taxes, employment, government benefits are the taxpayer's contributions to illegal immigration. SB54 legislative affect commerce can be read in the police officer's Bill of Rights, S.1043 in section (m) Sates rights, This section does not preempt State law or collective bargaining agreements or discussions during the collective bargaining process that provide rights for law enforcement officers that are substantially similar to the rights afforded by this section. If the Court now reads the employee guidelines from legislation SB54, This bill would, among other things and subject to exceptions, prohibit state and local law enforcement agencies, including school police and security departments, from using money or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, as specified, and would, subject to exceptions, proscribe other activities or conduct

in connection with immigration enforcement by law enforcement agencies. The bill would apply those provisions to the circumstances in which a law enforcement official has discretion to cooperate with immigration authorities. If the Court now reviews the word 'Commerce' in the Commerce Clause, it refers simply to trade or exchange. But,  the Framers of the Constitution intended to describe more broadly commercial and social intercourse between citizens of different states. Thus, the interpretation of "commerce" affects the appropriate dividing line between federal and state power. Moreover, what constitutes "interstate" commercial activity.  So, if we look at the trifecta of issues relating to the commerce clause regarding legislation SB54, the Court must hold, SB54 legislative activity is commerce and has a "substantial economic effect" on interstate commerce because the "cumulative effect" of one activity relating to the police officers inability to work with other agencies does have an effect on such commerce between the states and people within the states. The Court is aware states (defendants) are forbidden without the consent of Congress to lay any imposts or duties on imports or exports or any duty of tonnage. These prohibitions, , prohibit state and local law enforcement agencies, including school police and security departments, from using money or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement. Which are exercised state fiscal power and they give rise to relatively few disputes. The Commerce Clause states, that "The Congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." We also put to one side the question of prohibitory or discriminatory requirements, or burdensome ex- actions imposed by the state, which may be said to interfere with the guaranteed freedom of interstate intercourse or with constitutional rights of property. 'Commerce' in the Commerce Clause, it refers simply to trade or exchange between citizens of different states or within the same state.  The issue here is, The bill would apply those provisions to the circumstances in which a law enforcement official has discretion to cooperate with immigration authorities.

The defendants legislation changes interstate transportation because it involves local and state regulations involving illegal immigrants crossing boundaries between states which alter the pay rates between the states this is obnoxious to the plaintiff and the Negro race and it conflict with federal laws.

The Court must hold, that wage rates amounts to interstate commerce and therefore Legislation SB54 is invalidated at the local level. The legislation is concerned with  wages for an entire race of people from a foreign land and the wages are commerce of people between the states. This is concerning because unfair labor practices which is the nature of the SB54 regulations conflicts with state laws. California penal codes 830.31 and Section 836.32 which deal with persons who are peace officers and by it the authority extends to any place in the state for the purposes pertaining to the performance of their primary duties or when making an arrest pursuant to Section 836 with respect to danger to persons or property or of escape. The legislative intent of SB54 states, this bill would, among other things and subject to exceptions, prohibit state and local law enforcement agencies, including school police and security departments, from using money or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, as specified, and would, subject to exceptions, proscribe other activities or conduct in connection with immigration enforcement by law enforcement agencies. The bill would apply those provisions to the circumstances in which a law enforcement official has discretion to cooperate with immigration authorities. Legislation SB54 is violation of the Necessary and proper Clause, it limits the exchange of people and makes regular the immunity  for illegal immigrants which is interpreted as a regulation subject to a particular commerce that takes place between the states and which the plaintiff's taxes have become an exclusive form of commerce of the state for the illegal immigrants which the same taxes and benefits are excluded to be used by the plaintiff.   The commerce powers of SB54 legislation presupposes something not enumerated regarding the language of "essential worker" which is exclusive to the internal commerce of the state of California.

SB54 Legislation has the power to regulate transportation, wages and offers work guidelines for their state and city employees based on the private covenant the defendants entered into with illegal immigrants from Mexico and Central America. This gives the defendants the express powers to regulate the economy between states and the people within those states. The defendants **Shall not**…regulate commerce, Congress has that exclusive power, the defendants **Shall not**…have the concurrent powers to regulate commerce, Congress has that exclusive power, the defendants **Shall not**… assume that Congress's regulatory zone was mutual to the States, Congress has that exclusive power. It must be clear all the white man had to do was stoke of a pen to paper and he was able to control "commerce" between states and people of the state's since 1995.  The

defendants encouragement of illegal immigrants from Mexico and Central America migrating to the U.S. which was an elaborate action on part of the Mexican government to empty all Mexican jails of their criminals, rapist, drug pushers. Therefore, the Courts job, should you choose to accept it, is to determine whether the defendant's sovereignty has invaded the exclusive zone of commerce between people in a states and commerce between people in the same states? The Court must hold, Congress has that exclusive powers except on hybrid complicated approaches in dealing with interpreting the Commerce Clause.

The Courts history regarding the complicated holdings in prior Commerce Clause ceases that deal with cities or states overreaching their authority has been recognized as zones exclusive to federal authority. In Cooley v. Board of Wards (1851), the Court recognized state and federal authority were zones over commerce. There a Pennsylvania law requiring vessels entering Philadelphia to use local piolets, the Court applied a balancing test to judge the validity of the law.  In H.P. Hood and Sons v. Dumoond (1949), the Court applied the Baldwin test for protectionist laws to the state denial of a license to operate a depot to collect milk distribution too Boston. The Court saw the license denial as an effort by New York to horde a resource and thereby keep prices for its customers low. In, Edwards v. California (1941) a challenge to a California law aimed to reduce people from entering the State, they called these people dustbowl indigents and the law made it a crime being in the state and not being a resident of the state is a crime. This law is very similar to the plaintiff complaints.  The Court held in that case the people are "articles of commerce"; therefore, the law was found unconstitutional because it discriminates against out-of-state commerce. The Court must hold in this complaint the legislation known as SB54 discriminates against American workers who are articles of commerce' because the law is aimed to reduce American's (plaintiff) from entering the workforce and keeping wages low and it is not a crime by the defendants to enter the U.S. illegally from Mexico and Central America. The defendants have an exclusive zone of commerce between people, which then becomes the defendant's excusive powers of commerce between the people within the state  which enriches the commerce for the illegal immigrant from Mexico and Central America. The defendants are guilty of Fourteenth Amendment violations upon the plaintiff and the Negro race, it's having to do with exclusive privileges and rights intended to be secured for plaintiff and the Negro race and once again the Court is dealing with California

legislation,  which is dealing with redefining citizenship for the illegal immigrant and dealing with the goal of SB54 is abolish the Negro race. The legislations separate the races and are based on color and heritage. SB54 Legislation includes the authority to offer affirmative relief, by the defendants acting as the agents for the illegal immigrant for employment. The purposes and the procuring of the employment is that it comes with 'essential worker' title, unlike the title the Jewish people were given to wear outside their clothes by the German Army. This imaginary duty of the skill-set which have a hold of magical specialized expertise's that an entire race of illegal immigrants poses and they are the only race to have this ability to perform many particular functions of work, all labor related.

In finding the defendants state legislation unconstitutional, unlawful and declaring it a special "needs" admissions programs for the illiterate illegal immigrant from Mexico and Central America. The Court must find this legislation unlawful and enjoining the defendants from considering race of any application process for state, cities or as a government partner services or benefits for being used or supplied to by illegal immigrants from Mexico and Central America. The Court must hold that an injunction on all the services must be implemented to stop these legislative services from being funded and illegal immigrant students must not take part in the current educational programs and schools and universities they are attending. The medical services, monies and other health related services must end for the illegal immigrant from Mexico and Central America. Moreover, all services, all monies, all medical and retirement benefits offered in the legislations above to illegal immigrants, must be offered and provided to the American citizen who has lived in California since 1995. A monetary check to equal the value of services provided in from 1995 to July 2020 will be offered to each citizen who has lived or lives in the state of California from January of 1995 to July 2020.

The following laws apply here, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment. The applicability of Title VI of the Civil Rights Act of 1964 is the legislative history of Title VI reveals a congressional intent to halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution. Plaintiff's examination of the legislative history reveals the problem confronting

Congress was the discrimination against the Negro citizen at the hands of recipients of federal money. The plaintiff is seeking equal treatment in all the programs offered to illegal immigrants from Mexico. The Court's holding will assure Covid19 and hospital testing and treatments financed by the DCD and given to the defendants in California by the CDC for immigrants in the Central Valley. That entire CDC grant must go the American's, the plaintiff and Negro race in California, and the Anglo race, the Asian race, the East Indian race, and every single person of a race not mentioned, must be given the same Covid19 benefits in their communities as the defendants have allowed federal DCD money to used exclusively on illegal immigrants. For example, in the month on August 2020, a Northern California Mexican non-profit received 2 million face masks from the Disney Corporation. In an interview the director of the non-profit stated in an interview, "the masks will be distributed to the immigrant community in the central valley and all immigrant communities in the South Bay." The American government gives more benefits to illegal immigrants than Americans, the immigrants use the benefits and donations they receive from American companies and use them "only" for illegal immigrants from Mexico. THIS IS CLEARLY a Coup detat coming from the illegal immigrants from Mexico and Central America and the American people are being setup by the democratic party. Clearly the democratic party is party of treason. The defendants violate the language in subsection, 78 Stat. 252, like that of the Equal Protection Clause, it is majestic in its sweep.

*"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."*

The defendants forgot about California's prior brushes with the law; as prior legislations have met the Supreme Court's concept known as "discrimination". Like the phrase equal protection of the laws it is susceptible to varying interpretations; as Justice Holmes stated in Towne v. Eisner, 245 U.S. 418,425, 38 S.Ct. 158, 62 (1918), a word in not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content account to the circumstances and the time in which it is used.